Good morning, Your Honors. Chris Tarbell appearing on behalf of the appellant in this matter, Billy Lee Mayshack. I'd like to reserve one minute for rebuttal. Your Honors, we raised three principal issues in our briefs that weren't reversible in this case, and I'd like to address each of them in turn. First, I'd like to address the Court's dismissal in this matter of the County and the Sheriff's Department at the pleading stage. The only articulated reason, Your Honors, that the Court has provided to my client for his dismissal of the County and the Sheriff's Department is the failure to articulate and sufficiently plead a county policy or custom that was the ruling force behind his alleged constitutional deprivation. Your Honors, if you were to review the allegations in the third amended complaint and the motion to amend the third amended complaint, we believe the allegations were more than sufficient to survive a motion to dismiss and believe the Court erred in dismissing those parties with prejudice. In particular, Your Honors, our client alleged in those complaints that he was confined in the Men's County Jail and that he was a Section 288 pretrial detainee, which is a penal code, Section 288 for child molester. He also alleged that otherwise the L.A. County had a general policy of segregating special needs detainees, but that he himself had never been transferred or segregated with any of the other special needs detainees. Instead, while incarcerated at the Men's Central Jail, he was beaten by inmates after an on-duty deputy and custodial assistant showed his jail record card, which is an informational card that contains the name of the inmate and the charges. And those inmates, after seeing the card, were thereafter took it upon themselves to beat my client at the direction of the custody assistant and the deputy. In addition to himself being beaten, he also witnessed two other Section 288 inmates being attacked while he was a pretrial detainee. He witnessed them being attacked nearly one day after his own beating. After those attacks, he reported to a lieutenant believer in Dunsmore that he had seen the two inmates being beaten and that he felt in fear for his life, but after that, soon thereafter, he was put back into the general population. In addition, Your Honor, two subsequent times thereafter, he was transferred to different, safer housing, but then, for a short period of time, but then reassigned back into the general population. Your Honors, we think that these allegations were enough to raise a plausible claim against the county and the Sheriff's Department that there was a policy of inaction during the time in which my client was attacked, in which the county failed to segregate Section 288 detainees. All right, Counselor, the one problem I see with this is that the Fourth Amendment complaint doesn't actually name the L.A. County and the Sheriff. So how are they, are they still in the case, and are you appealing that, or what are you arguing, that they weren't allowed to name them? That's correct, Your Honor. We believe that our client continues to try to name the county and the Sheriff's Department, at each successive pleading. By the time he attempted to name them in the Third Amendment complaint, he had been repeatedly told by the trial court that he had failed to ever allege a sufficient policy to sustain claims against those clients. And by the Third Amendment complaint, in fact, the judge never even addressed the county and the Sheriff's Department as parties. Any reasonable litigant would have interpreted that to be a dismissal with prejudice. Were they in the case at that time? Had they been in the case? Had they been represented? Your Honor, they had been represented by the same counsel as Officer Gonzales was for most of the case, and all of the pleadings and everything had gone to them. I don't believe they were separately represented by anybody other than Gonzales' counsel through the case. Okay, and I guess my last question is, when is the evidence of the policy that was in the L.A. County Sheriff's Jail actually revealed? Oh, it was revealed approximately five months before trial, after we came into the case and were appointed counsel. The discovery was reopened, and we served additional discovery on Hunshai, one of the other appellees in this matter. And in his responses to our request for production, the policy was produced. Your Honor, having no specific questions about that area, I'd like to turn briefly now to the dismissal of the official capacity claims at the summary judgment stage. If you're going to save time for rebuttal, you'll have to save it. There won't be any extra time. Okay, yeah, I'll briefly address the last two issues and then save as much time as I can for rebuttal. We just would like to emphasize that much like the dismissal of the county and their sheriff's department at the pleading stage, we believe that the evidence, actual evidence that our client submitted in opposition to the summary judgment motion was enough to raise a triable issue of fact as to whether the official capacity claims against the sheriff's department and the, I'm sorry, against Gonzalez and Hunshai should have been allowed to continue. In particular, our client submitted verified oppositions to the motions for summary judgment and for judgment on the pleadings, in which he recounted under the penalty of perjury much of the same allegations that he had put in his complaint that were based on personal knowledge, including being housed in the men's central jail, witnessing two additional attacks of other 288 inmates, and witnessing Gonzalez and Hunshai identify and point to the other two inmates specifically as Section 288s. In addition to the verified oppositions, a record is replete with evidence, including the interview that the custodian's attorney assistant to Gonzalez gave to the ICIB, a letter of termination of Officer Gonzalez, which suggested that he was not actually terminated for not segregating, but because he had failed to report the beatings that took place, as well as some additional complaints by other inmates witnessing sort of the widespread practices that were ongoing, and we believe that under this Court's jurisprudence, the amount of evidence our client put in was more than sufficient to raise at least a tribal issue as to whether there was a county policy of inaction with respect to segregating Section 288s, and that the official capacity claims should not have been given judgment. If I can briefly, Your Honors, I'd just like to address the last point and then reserve as much time as I can for rebuttal. We think it was error, and it was prejudicial error, for the Court to have excluded the highly relevant and probative ICIB interview of the custodian's assistant Gonzalez. Not only did this interview contain the only direct evidence by one of the parties in the case of what had occurred, but it did also confirm and corroborate the widespread problem of non-segregation of Section 288s. And in addition to that, we think that it was clearly fell into one of the numerous hearsay objections, exceptions, I'm sorry, that we set forth in our briefs. And without further questions, I'd like to reserve the last minute of my time for rebuttal. May it please the Court, good morning. My name is Kevin Louth. I'm appearing on behalf of the appellee, Robert Gonzalez. Your Honors, in his reply brief, Mr. Mayshack asserts that the defendants, including my client Gonzalez, withheld an internal Sheriff's Department memorandum dated July 17, 1997, which reflected an official policy of not automatically segregating the 288 inmates. As a result of that, Mr. Mayshack's claim is that his causes of action against the county and the Sheriff's Department were dismissed at the pleading stage, and summary judgment was entered in favor of my client on Mayshack's official capacity claims. First of all, there is nothing in the record which supports Mr. Mayshack's claim that my client, Mr. Gonzalez, had or withheld this document from him. First of all, the record does show that in a response to a request for production of documents that was propounded by Mr. Mayshack, where he asked for all rules, regulations, and policy directives of the Los Angeles County Men's Jail. As broad as that request was, and we objected to it on that basis alone, my client, Mr. Gonzalez, nonetheless responded that he had no documents that were responsive to this request. His responses were served in September of 2003. They are a part of the record. He hadn't been a county employee for over five years. Mr. Gonzalez worked for the county for less than a year. He was a probationary employee and a custody assistant. In addition, and contrary to Mr. Mayshack's reply brief, this document was also not within the scope of the subpoenas that the court issued to the Los Angeles County Jail's Record Department at plaintiff's request in December of 2003. The actual subpoena has not been made a part of the record. Mr. Gonzalez, however, on November 18th, 2003, did direct that the subpoena include a request for, quote, all documents related to the Los Angeles County Jail's Record Department. You're talking just about Mr. Gonzalez now. That's correct, Your Honor. Not about whether the document was within the possession of the county or the sheriff or anyone but Mr. Mayshack. That's correct, Your Honor. What I was moving on to was to point out that at Mr. Mayshack's request, the district court did issue a subpoena following my client's responses to these interrogatories, asking for a number of different documents. But I dispute that this policy was within the request, within the scope of any of the subpoenas that the district court issued. At the time, was your client still employed by the county? No, Your Honor, he was not. He was terminated in February of 1998. So that's the standard. Refresh my memory. It's possession, control. Possession, custody or control. That would be my understanding of the standard. Now, did you also represent the county at that time? We did make an appearance for the county at that time, Your Honor, as a non-party. We responded to the subpoena on their behalf. So, yes, my firm did handle that. And was the same request made of the county? I don't, I'm going back some years, Your Honor. I don't want to misrepresent. I don't believe that there was any discovery that early in the case that Mr. Mayshack had propounded directly to the county. But wouldn't he have been able to have propounded it to all defendants? I mean, or if he asked the court, it would be for all defendants? I'm sorry, Your Honor, I don't know. I mean, the big issue, right? The big issue was the Monell issue, both with respect to the liability of the county and the sheriff and with respect to the official's capacity, right? I agree, Your Honor, yes. Okay. So if there was evidence of a policy or lack thereof and Mayshack asked for a discovery, I would think he wouldn't limit that request to what was within Mr. Gonzalez's possession, custody, or control. I know. I understand what you're saying, Your Honor. But again, Mr. Gonzalez was no longer a county employee. And again, following your line of reasoning, Your Honor, I think the answer to that is that within the scope of these subpoenas, this policy did not fit within anything that was requested at that time by the district court subpoenas that were issued on behalf of Mr. Mayshack. Thank you. Your Honor, Mr. Mayshack also has asserted in his reply brief, as well as in his opening brief, that this document was not produced to him until five months before trial. And in fact, counsel for appellant has conceded this morning that this document was produced to him by co-defendant Junkai. Once again, there's nothing in the record that shows my client, Robert Gonzalez, was the one who produced this document to Mayshack or that he had this document any time before Mr. Mayshack. It's interesting is that, you know, Mr. Mayshack also concedes that he had this particular policy memorandum more than five months before trial. Yet even though he claims it was a key document, he didn't seek leave of court to bring a motion for leave to amend this complaint or to add new parties when this document was produced to him. Why was that? Because the document was merely cumulative of what Mr. Mayshack already had personal knowledge of. Mr. Mayshack was already able to prove, based upon his own personal knowledge, that back in 1997, the L.A. County Jail had a policy of not automatically segregating the 288 inmates. Moving on to the second issue, I think that Mr. Mayshack has also failed to demonstrate that the district court abused its discretion in excluding the Gonzalez ICID document. In his reply brief, Mr. Mayshack relies primarily upon two exceptions, the first being the statements that were actually made by Mr. Gonzalez at the time of two of his hearings. The first level being the statements that were actually made by Mr. Gonzalez at the time of two of his hearings. Are you dividing your argument? Oh, yes, I am, Your Honor, and I see I'm getting a little bit over on time here. Yeah, you've left him four minutes. So can we just get to the key issue, because we all understand the double level of hearsay. The key issue, though, is why did the district court, it wasn't an abuse of discretion by the district court at that point to exclude the testimony of Ms. Gillen, who could have testified that she wrote an accurate transcript of what Mr. Gonzalez said? No, Your Honor, I don't believe so. Counsel for Mr. Mayshack had plenty of time to take the deposition of Ms. Dugin at any time to lay any foundation for that statement at the time of trial, and didn't do so. I will yield, Your Honor, at this point. Thank you, Your Honor. Paul Beechford, Defendant Romeo Yun Chai. I'd like to address two brief issues in the time that I have remaining, specifically to the individual capacity claims raised against Mr. Yun Chai. The first one being, and it's brief, with respect to the statute of limitations. The case was not filed until almost three years after the incident began, and Mr. Yun Chai was not brought into the case until four years after that. That seven-year delay resulted in prejudice to Mr. Yun Chai, and that evidence is in the record at Mr. Yun Chai's supplemental excerpts of record, pages 233 for about approximately 10 pages, and then again at pages 299 for approximately 10 pages. I'd like to ask you just a timeline. Was Mr. Yun Chai still employed by the county jails? No, Your Honor. Okay, so when was he there, and when was he gone? He left, my recollection is he left in 2000. He left approximately three years after this incident, for personal reasons. My assertion is that he was this doe that was named in the first complaint, and that he was quite aware of what was going on all the time. So that he wasn't prejudiced. That's the assertion, Your Honor, but actually there's nothing in support of that. He had, he was, there's no proof in the record that he ever had any knowledge about this complaint or lawsuit. He had left the Sheriff's Department, and he had gone about his way, and when he was finally brought in, the county gave him conflict counsel, which is when my office came in, and we knew nothing about the case prior to that, and the case had already been going on for seven or eight years, and the county's document destruction policy would have eliminated documents as of 2002, the documents would have been destroyed. Additionally, there was evidence in the record from a variety of witnesses, Witness Blevin, Witness Hayden, and all the other witnesses, that their memories, by the time, you know, he got involved and got a discovery line, their memories had faded. Can I just briefly, in my short time remaining, get to the, you know, what happened to Mr. Yun Chai? I do not believe that there was an abuse of discretion to exclude that statement, but even if there was an abuse of discretion to exclude it as to Mr. Gonzales, it certainly should have been excluded with regard to Mr. Yun Chai. It was not his statement, it was not his admission, so even if it was relevant as to Mr. Gonzales, it wasn't admissible as to Mr. Yun Chai, which means he would have been entitled to, frankly, a trial. So there's no trial without that document in the record, which is what we had, so the jury's verdict should be affirmed, and that's an alternative basis for affirming the record. Another important part, which I think is pretty much, maybe it's not really well laid out in the record, which is that this whole statement that's in there, it discusses, it doesn't discuss what happened to Mr. Mayshak, and that was on the record, but it doesn't pertain to the events that happened after Mr. Mayshak was assaulted. It doesn't pertain to Mr. Mayshak's assault. If it doesn't pertain to Mr. Mayshak's assault, then it's not relevant. So it, again, it wasn't Mr. Yun Chai's statement, so even if it should have been included, which it shouldn't have been, and then, Your Honor, Judge Wardlaw brought up, well, was it abuse of discretion not to have brought in that one witness who might have testified? There's a number of reasons why that wasn't an abuse of discretion. Number one, the person wasn't ever listed on the witness list. The person was never made the subject of discovery, and... But that's probably because Judge Morrow had allowed the statement in, so there was no need to open it up. The defense raised throughout the whole course of the case that this statement, regardless of the summary judgment ruling, that when the case was brought up, this statement was going to be excluded. It was, her name was discussed in depositions during the case when the ICIB investigated it. But then Judge Morrow had heard it, had admitted it for summary judgment, and then Judge Gutierrez admitted it and didn't decide not to admit it until the night before the trial. No, but what I'm saying is, is that the issue of her, of her importance to this document, that issue was brought up post-Judge Morrow when the judge granted the parties that, you know, Mr. Macek a significant period of time to conduct discovery before the trial. Right, but how do you respond to the fact that Judge Gutierrez had admitted it all the way up to the night before the trial? Well, he, he, he issued his, he made his ruling the day before the trial. He made a ruling in the, in the early part of the day, and then later that day, he hadn't excluded, he hadn't admitted it or excluded it up until that time. He hadn't admitted it or excluded it. In the morning, he said, you know what, I think I'm going to let it in. In the afternoon, he, that's, that's what the record is. In the morning, he said, I think I'm going to let it in. In the afternoon, he asked for further, a further hearing, and he said, I'm going to exclude it. Up until that time, the defense had made very clear that it was not proper and it was excludable as hearsay, and they had brought up the fact that the plaintiff had never taken this person's deposition, she'd never been disclosed, and the defense had never talked with her, never met her, and they wanted to basically bring her in at trial and do discovery at trial, which is what the, which is what the judge actually said during the course of the trial. I, I think I'm over my time. Yes, you are. I apologize. Yes, thank you. Your Honor, just to respond to a few points briefly, counsel for Pelley-Gonzalez spent time talking about that there was no evidence that they had withheld any records in response to the subpoenas. One important point I think to take from that is that it makes it all the more clear why the county and the sheriff's department should have been allowed to continue to be, in this case, doing discovery. That doesn't, yes. Okay. Next. Also, if you'll, if you'll look at the record from our, our client, when they, he was propounding discovery, continued to prided of the child discovery, not just on these two appellees, but also on the county and the sheriff's department. So when the subpoenas were issued, our client believed that he was subpoenaing all the defendants. Also, I, I think Judge Wardlaw's point was what I was going to say with response to why Guillen was not called or deposed. Up until then, every judicial opinion to address this issue had found the document to be admissible, and there was no reason for us to depose her or to put her up, disclose her on the witness list. And with that, my time is over, and I will submit all those grounds. Thank you, Jeff. Thank you. The case just argued will be submitted. Next case for oral argument is United States v. Vargas-Mendoza.
judges: Fletcher B. , Reinhardt, Wardlaw